1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **EASTERN DISTRICT OF CALIFORNIA**
10

11   TOM JON RILURCASA,                    )   Case No.: 1:20-cv-01568-NONE-SAB (PC)
                                           )
12            Plaintiff,                   )
                                           )   FINDINGS AND RECOMMENDATIONS
13       v.                                )   RECOMMENDING DISMISSAL OF CERTAIN
                                           )   CLAIMS AND DEFENDANTS FOR FAILURE TO
14   STATE OF CALIFORNIA, et al.,          )   STATE A COGNIZABLE CLAIM
                                           )
15            Defendants.                  )   (ECF No. 21)
                                           )
16                                         )
                                           )
17                                         )

18          Plaintiff Tom Jon Rilurcasa is proceeding *pro se* and *in forma pauperis* in this civil rights

19   action pursuant to 42 U.S.C. § 1983.

20          Currently before the Court is Plaintiff's second amended complaint, filed July 16, 2021.

21                                    **I.**

22                        **SCREENING REQUIREMENT**

23          The Court is required to screen complaints brought by prisoners seeking relief against a

24   governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court

25   must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous

26   or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary

27   relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28

28   U.S.C. § 1915A(b).

1    A complaint must contain "a short and plain statement of the claim showing that the pleader is

2   entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but

3   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

4   not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550

5   U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated

6   in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

7    Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally

8   construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th

9   Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which

10  requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is

11  liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962,

12  969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and

13  "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility

14  standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**II.**

**SUMMARY OF ALLEGATIONS**

17    Plaintiff names Warden Stu Sherman, Doctor Ryan Kim, Doctor Bernard Brown, Doctor

18  Martin Laufik, Doctor Bruce Troup, Doctor Griffith Eleonor, Physician Assistant Mbadugha Chika,

19  Physician Assistant Oberst David, Registered Nurse Angela Ratliff, Registered Nurse Fajardo Grace,

20  Registered Nurse Roberts Danyelle, Physical Therapist Moreno Estere, HCGOR S. Gome, HCARN D.

21  Roberts, CEO C. Cryer and Chief HCCAB S. Gates, as Defendants.

22    "It is the responsibility of CDCR to promote the utilization advance directives to determine

23  plaintiff's health care preferences, including, but not limited to decisions regarding plaintiff's

24  medication and surgeries on his knee and shoulder. However, plaintiff was never informed of his right

25  to say in his medical care by co[rr]ections staff, medical staff or an ASL interpreter." (Sec. Am.

26

27

28

Compl. at 5.)[1]  "PCP failed to properly schedule plaintiff with a high priority care within fourteen days.  Instead, plaintiff was schedule routine care within 90, 180 days, which caused plaintiff[']s first surgery on his knee to be put off for over two years, and he is still waiting for his second surgery on his shoulder." (Id.)  "Plaintiff was also refused specialized health care housing in the he [sic] was refused a lower bunk/lower tier which cause more damage to plaintiff[']s knee and shoulder." (Id. at 6.)

"[I]t is the responsibility of all CDCR to make sure that of [sic] deaf inmates has effective communication when there is an exchange of health care information with the health care provider or in health care grievances, with the help of an American sign language interpreter.  It is plaintiff's statements when he seen doctors, and nurse them [sic] would refuse from time to time to provide him with an ASL interpreter." (Id. at 6-7.)

"[D]efendants did not provide proper medical care made [sic] plaintiff wait two years to receive surgery, and more damage to his knee and shoulder.  This shows that, et al, all named defendants that is prison officials, et al, were want only [sic] deliberately indifferent to plaintiff[']s serious medical need causing him substantial harm to his health." (Sec. Am. Compl. at 13-14.)

**III.**

**DISCUSSION**

**A.      Deliberate Indifference to Serious Medical Need**

The Eighth Amendment's prohibition against cruel and unusual punishment protects convicted prisoners. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th 2006) (quotation marks omitted).  To maintain an Eighth Amendment claim, a prisoner must show that prison officials

---

[1] References herein to page numbers are to the Court's ECF pagination headers.

1    were deliberately indifferent to a substantial risk of harm to her health or safety.  Farmer v. Brennan,

2    511 U.S. 825, 847 (1994); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels,

3    554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v.

4    Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  A deliberate indifference claim has both a subjective and

5    an objective element.  Helling v. McKinney, 509 U.S. 25, 35 (1993); Colwell v. Bannister, 763 F.3d

6    1060, 1066 (9th Cir. 2014) (quoting Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in

7    part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014)); Lopez v. Smith, 203

8    F.3d 1122, 1133 (9th Cir. 2000); Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).  Mere

9    negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's

10   conduct must have been wanton.  Farmer, 511 U.S. at 83; Frost, 152 F.3d at 1128.

11         To meet the objective element of the deliberate indifference standard, a plaintiff must

12   demonstrate the existence of a serious risk to his health or safety.  Helling, 509 U.S. at 35; Colwell, 763

13   F.3d at 1066.  A prison official is deliberately indifferent under the subjective element of the test only

14   if the official "knows of and disregards an excessive risk to inmate health and safety."  Colwell, 763

15   F.3d at 1066.  The subjective component requires the plaintiff to show that the official knew of and

16   disregarded the substantial risk of harm.  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002.)

17   Deliberate indifference requires more than just a lack of due care, the prison official must be both aware

18   of the facts from which an inference can be drawn that the substantial risk of serious harm exists and he

19   must also draw the inference.  Colwell, 763 F.3d at 1066.  The subjective element focuses on the

20   defendant's state of mind.  Toguchi, 391 F.3d at 1057.

21         Plaintiff's medical claim concerns the alleged delay in receiving surgery ordered on his right

22   shoulder and right knee.

23         With regard to Defendants Ryan Kim,  Bernard Brown, Martin Laufik, Bruce Troup, Griffith

24   Eleonor, Mbadugha Chika, and Oberst David, Plaintiff alleges that he/she "is responsible for all

25   medical decisions that the defendant makes for all I/M's under defendant care.  Defendant reviewed

26   plaintiff Rilurcasa Tom Jon's medical records, and after review in plaintiff's medical records, the

27   defendant did willingly show deliberate indifference to plaintiff's serious medical need in that the

28   defendant ignored plaintiff's medical record that clearly showed that plaintiff's knee and shoulder

4

1    were damaged and plaintiff was still is in serious pain.  In addition, because of the defendant's in

2    action [sic] it caused further damaged [sic] to the plaintiff's injuries in plaintiff's right knee and right

3    shoulder. " (Sec. Am. Compl. at 19-45.)  In addition, Defendants did not provide Plaintiff with pain

4    medication or surgery for his right knee and right shoulder.  (Id.)

5    With regard to Defendant Ratliff Angela, Plaintiff alleges that she is "responsible for all

6    medical decision that the defendant made for all I/M's under the defendant's medical care.  The

7    defendant reviewed plaintiff Rilurcasa medical file after doing examination and after nothing [sic] the

8    damage to plaintiff's right knee and right shoulder, the defendant did willfully show deliberate

9    in[]difference to plaintiff's serious medical needs." (Sec. Am. Compl. at 45.)  Defendant "refused to

10   properly treat the damage to plaintiff's right knee and right shoulder which has left the plaintiff in

11   serious pain for many months now." (Id.)  In addition, Defendant did not provide Plaintiff with pain

12   medication or surgery for his right knee and right shoulder.  (Id. at 48.)

13   With regard to Defendants Fajardo Grace and Roberts Danyelle, Plaintiff alleges he/she "is

14   responsible for all medical decisions that the defendant made for all I/M's under the defendant's

15   medical care.  The defendant reviewed plaintiff Rilurcasa medical file after doing examination and

16   after not[]ing the damage to plaintiff's right knee and right shoulder, the defendant did willfully show

17   deliberate in[]difference to plaintiff's serious medical need. In that the defendant plaintiff [sic] and his

18   medical records and refused to properly treat the damage to plaintiff's right knee and right shoulder

19   which has left the plaintiff in serious pain for many months now.  Furthermore, because of the

20   defendant in action [sic], it caused further damage to the plaintiff's right knee and right shoulder. . . "

21   (Sec. Am. Compl. at 49-54.)  In addition, Defendants did not provide Plaintiff with pain medication or

22   surgery for his right knee and right shoulder.  (Id. at 52, 56.)

23   With regard to Defendants Moreno Estere, S. Gome, and D. Roberts, Plaintiff alleges that

24   he/she "is responsible for the physical therapist of all I/M's under her care.  The defendant reviewed

25   plaintiff's medical rile and question plaintiff about how much pain plaintiff was in.  Plaintiff told

26   defendant repeatedly that plaintiff did not want to work out because plaintiff's right knee and right

27   shoulder were in causing [sic] plaintiff a lot of pain, but the defendant kept telling him to work out

28   anyway.  The defendant actions showed willfully deliberate in[]difference to plaintiff's serious

1    medical need.  In the defendant [sic], forced plaintiff to work out even though it was causing plaintiff

2    pain caused further damage to plaintiff's right knee and right shoulder."  (Sec. Am. Compl. at 57-68.)

3    In addition, Defendants failed to provide Plaintiff with pain medical or surgery for his right knee and

4    right shoulder.  (Id. at 59, 63, 67.)

5         With regard to Defendant C. Cryer and S. Gates, Plaintiff alleges he/she "is responsible for all

6    the medical appeals under his/her preview, and all I/M's under his/her care.  [Defendants] reviewed

7    plaintiff's medical file and appeal.  Thus, the [Defendants] knew all the case factors regarding

8    plaintiff's serious medical condition and his need for immediate medical care, but [Defendants]

9    willfully refused to make an appellant ruling that would give plaintiff the opportunity to be properly

10   treated.  Thus, [Defendants] inaction showed willfully [sic] deliberate indifference to plaintiff's

11   serious medical need.  Causing plaintiff undo pain and suffering, causing further damage to plaintiff's

12   right knee and right shoulder."  (Id. at 68-72.)

13        There are insufficient factual allegations to demonstrate how or why any of the named

14   Defendants acted with deliberate indifference to his medical needs.  Plaintiff's allegations are

15   conclusory in nature and devoid of factual details to each Defendants' actions and/or inactions.

16   Plaintiff has simply failed to demonstrate that any Defendant denied Plaintiff's treatment or acted with

17   a culpable mental state.  While Plaintiff alleges he was denied pain medication and/or surgery, he fails

18   to demonstrate that any Defendants made a conscious decision in disregard to a substantial risk to his

19   medical condition.  In denying Plaintiff's health care appeal, it was specifically noted that Plaintiff

20   was "seen on July 18, 2019, by [his] primary care provider[.]  Documentation states the referral to

21   orthopedics was denied and did not meet InterQual criteria."[2]  (Id. at 94.)  Plaintiff was issued a knee

22   brace and referred to physical therapy for evaluation and treatment.  (Id.)  Plaintiff was also advised to

23   use his crutches, and it was noted that after physical therapy he would be further evaluated by his

24   primary care provider.  (Id.)  A physician's adherence to CDCR health care services policy is

25

26   [2] InterQual is a computer program which the CDCR uses to determine whether a patient meets certain objective medical
     criteria for a requested service  See Miller v. California Dep't of Corr. & Rehab., No. 16-CV-02431-EMC, 2018 WL
27   534306, at *12 (N.D. Cal. Jan. 24, 2018); see also Griffin v. Do-Williams, No. 2:16-cv-01435 WBS CKD P, 2019 WL
     3975358, at *8 (E.D. Cal. Aug. 22, 2019) ("InterQual criteria are a library of evidence-based clinical decision support
28   criteria used to assess the medical necessity of a proposed treatment.".

1   insufficient to state a cognizable deliberate indifference claim.  Plaintiff has not alleged facts that, if

2   true, would show that any Defendant's denial of a referral to orthopedics was medically unacceptable

3   and chosen in conscious disregard of an excessive risk to his health.  Plaintiff's allegations as to

4   professional judgment address a disagreement between him and the medical providers as to the

5   treatment that should have been provided which is insufficient to state a claim. Sanchez v. Vild, 891

6   F.2d 240, 242 (9th Cir. 1989). The issue is whether the defendants were aware of his alleged need for

7   surgery and failed to adequately respond. Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

8   Therefore, Plaintiff cannot state a claim based on the alleged adherence to the InterQual criteria or his

9   disagreement with the medical professionals as to the treatment provided.  Accordingly, Plaintiff fails

10  to state a cognizable claim for deliberate indifference.

**B.      Equal Protection Violation**

12          In the second amended complaint and for the first time in this action, Plaintiff contends that he

13  is "deaf and needs an American Sign Language Interpreter as his primary form of communication to

14  understand [Defendants].  However, [Defendants] went out of their way to refuse plaintiff a ASL

15  Interpreter.  Thus, denying plaintiff his rights under the Americans with Disabilities Act [and] Equal

16  Protection [Clause]…." (Sec. Am. Compl. at 19, 20, 23, 27, 31, 34, 38, 42, 46, 50, 53, 54, 57, 61, 65,

17  69, 72, 73.)

18          The Equal Protection Clause requires that persons who are similarly situated be treated alike.

19  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Hartmann v. California

20  Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021,

21  1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  To state a claim, Plaintiff

22  must show that Defendants intentionally discriminated against him based on his membership in a

23  protected class.  Hartmann, 707 F.3d at 1123; Furnace, 705 F.3d at 1030; Serrano v. Francis, 345 F.3d

24  1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).

25          Plaintiff makes no allegations that he was treated differently because he was deaf or that any

26  policy or law separately classified him on the basis that he was deaf.  Rather, Plaintiff's contention is

27  that the prison failed to accommodate him—a right created by the ADA and Rehabilitation Act, not

28

7

the Equal Protection Clause. See Vinson, 288 F.3d at 1156. Plaintiff identifies no law or policy that

treated him differently because he was deaf.  Plaintiff's § 1983 equal protection claim.

### C.      Americans with Disabilities Act Violation

Title II of the ADA, which "prohibits a 'public entity' from discriminating against a 'qualified

individual with a disability' on account of that individual's disability, covers inmates in state prisons."

Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 208 (1998) (citation omitted); see Castle v.

Eurofresh, Inc., 731 F.3d 901, 910 (9th Cir. 2013) ("Title II applies to the operation of state prisons.");

see also Pierce v. Cnty. of Orange, 526 F.3d 1190, 1214 (9th Cir. 2008) ("It is undisputed that Title II

applies to [county] jails' services, programs, and activities for detainees."). To achieve compliance

with the Act, "Title II authorizes suits by private citizens for money damages against public entities

that violate § 12132." United States v. Georgia, 546 U.S. 151, 154 (2006) (citing 42 U.S.C. § 12133).

Section 12132 provides: "no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs, or

activities of a public entity, or be subjected to discrimination by any such entity." To state a claim

under Title II, a plaintiff must allege:

> he is an individual with a disability; (2) he is otherwise qualified to participate in or
> receive the benefit of some public entity's services, programs, or activities; (3) he
> was either excluded from participation in or denied the benefits of the public
> entity's services, programs, or activities, or was otherwise discriminated against by
> the public entity; and (4) such exclusion, denial of benefits, or discrimination was
> by reason of his disability.

Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010) (citation and brackets omitted).

A person is "disabled" under the ADA if he or she has "a physical or mental impairment that

substantially limits one or more major life activities of such individual; ... a record of such an

impairment; or ... [is] regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life

activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping,

walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking,

communicating, and working." Id. § 12102(2)(A). Major life activities also include the operation of

major bodily functions, such as "functions of the immune system, normal cell growth, digestive,

8

bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." Id. § 12102(2)(B).

A "qualified individual with a disability" under Title II is anyone with a disability who, "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).  This definition, which does not require "voluntary" participation in the public entity's services or programs, applies to state prisoners and county jail detainees. Yeskey, 524 U.S. at 211; Pierce, 526 F.3d at 1214-15.

"[T]he ADA entitles inmates to receive the 'benefits' of the incarcerating institution's programs and services without facing discrimination on account of a disability." Armstrong v. Schwarzenegger, 622 F.3d 1058, 1068 (9th Cir. 2010). Such benefits may include the right to participate in or receive a prison's "recreational 'activities,' medical 'services,' and educational and vocational 'programs.' " Yeskey, 524 U.S. at 210. The Ninth Circuit has found that the "denial of mobility-assistance devices to persons unable to physically function without them, the denial of hearing devices to deaf [inmates], and the denial of accessibility devices, such as tapping canes, to blind [inmates]" may violate Title II where the deprivations force disabled prisoners "into the vulnerable position of being dependent on other inmates to enable them to obtain basic services, such as meals, mail, showers, and toilets." Armstrong v. Brown, 732 F.3d 955, 960 (9th Cir. 2013); see also Bogovich v. Sandoval, 189 F.3d 999, 1002 (9th Cir. 1999) ("Ordinarily, state prisoners' ADA claims relate to issues such as the denial of access to prison facilities, denial of satisfactory medical attention, denial of sign language interpretation services, or denial of the opportunity to participate in educational, vocational, or rehabilitation programs.").

The proper defendant in an ADA action is the public entity responsible for the alleged discrimination. United States v. Georgia, 546 U.S. 151, 153 (2006). State correctional facilities are "public entities" within the meaning of the ADA.  See 42 U.S.C. § 12131(1)(A) & (B); Penn. Dept. of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998); Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997).  However, a state official sued in her official capacity is, in effect, a suit against the government

entity and is an appropriate defendant in an ADA action.  See Applegate v. CCI, No. 1:16-cv-1343 MJS (PC), 2016 WL 7491635, at *5 (E.D. Cal. Dec. 29, 2016) (citing Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187-88 (9th Cir. 2003); Kentucky v. Graham, 473 U.S. 159, 165 (1985) ).  A plaintiff also cannot assert a claim under section 1983 against Defendants in their individual capacities to vindicate rights created by the ADA and the RA.  See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002).

Here, Plaintiff's claim that he was denied a sign language interpreter at various medical appointments is sufficient, at the pleading stage, to state a cognizable claim under the ADA against Warden Stu Sherman in his official capacity.

### D.     California Code of Regulation Violations

To the extent that Plaintiff seeks to bring claims based on a purported violation of Title 15, there is no independent cause of action for a violation of Title 15 regulations.  See, e.g., Parra v. Hernandez, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); Chappell v. Newbarth, No. 1:16-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations).  Similarly, there is no liability under § 1983 for violating prison policy. Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009).

### IV.

### CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the Court finds that Plaintiff has stated a cognizable ADA claim against Defendant Warden Stu Sherman only in his official capacity.  However, Plaintiff has failed to state any other cognizable claims.  In light of the fact that Plaintiff has twice been given leave to amend, the Court finds that further leave to amend would be futile and the first amended complaint should be dismissed without leave to amend. Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.").

Accordingly, it is HEREBY RECOMMENDED that:

1.      This action proceed on Plaintiff's ADA claim against Defendant Warden Stu Sherman in his official capacity; and

2.      All other claims and Defendants be dismissed from the action for failure to state a

cognizable claim for relief.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **October 12, 2021**

UNITED STATES MAGISTRATE JUDGE