UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM JON RILURCASA,<br><br>        Plaintiff,<br><br>    v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>        Defendants. | Case No.: 1:20-cv-01568-JLT-SAB (PC)<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS<br><br>(Doc. 23) |

## I.  Introduction

The assigned magistrate judge issued findings and recommendations that the instant action proceed on Plaintiff's Americans with Disabilities Act claim against Defendant Warden Stu Sherman in his official capacity and that all other claims and Defendants be dismissed without leave to amend. (Doc. 23.) After receiving an extension of time, Plaintiff filed objections on November 19, 2021. (Doc. 28.)

According to 28 U.S.C. § 636 (b)(1)(C), the Court has conducted a *de novo* review of the case. Having carefully reviewed the entire file, including Plaintiff's objections, the Court concludes that the magistrate judge's findings and recommendations are supported by the record and by proper analysis.

## II.  Discussion

### A.  Eighth Amendment Claim

Plaintiff's primary objection relates to his Eighth Amendment claim. (*See generally* Doc. 28.)

1

To state a cognizable Eighth Amendment inadequate medical care claim, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The findings and recommendations conclude that Plaintiff's allegations of deliberate indifference are conclusory and lack sufficient factual detail to suggest that any Defendant denied treatment or acted with the requisite culpable mental state. (Doc. 23 at 6.)[1] Plaintiff's objections do not meaningfully challenge the magistrate judge's finding that his deliberate indifference claims are conclusory. Rather, Plaintiff argues that his ongoing knee and shoulder pain constitute a serious medical need. (*See* Doc. 28 at 2-3.)

### 1.      Serious Medical Need

A serious medical need exists when "failure to treat the injury or condition 'could result in further significant injury' or cause 'the unnecessary and wanton infliction of pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006)). Indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id*. (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Plaintiff alleges that his chronic knee and shoulder pain constitutes a serious medical need. *See Jackson v. Pompan*, 2014 WL 2085353, at *3 (N.D. Cal. May 19, 2014) ("[C]hronic knee pain that turned out to include an ACL tear suffices to permit a jury to find the existence of objectively serious medical needs."); *Gonzalez v. Runnels*, 2010 WL 3629843, at *5 (N.D. Cal. Sept. 14, 2010), aff'd, 451 F. App'x 664 (9th Cir. 2011) ("evidence that [plaintiff] complained of shoulder pain occasionally might allow a reasonable jury to conclude that the shoulder pain amounted to an objectively serious

---

[1] The findings and recommendations state Plaintiff alleged he did not receive pain medication from certain Defendants. (*See* Doc. 23 at 5-6.) Plaintiff's complaint alleges he did not receive *proper* pain medication from Defendants Kim, Brown, Laufik, Troup, Griffith, Mbadugha, Oberst, Ratliff, Fajardo, Roberts, Moreno, S. Gome, and D. Roberts. (Doc. 21 at 22, 25, 29, 33, 36, 40, 44, 48, 52, 56, 59, 63, 67.) The Court cannot tell if he is alleging that he received no pain medication or if he found the medication provided to be insufficient. Furthermore, though the complaint asserts deliberate indifference claims against Defendant Sherman, the findings and recommendations do not squarely address those claims. However, neither issue warrants a departure from the findings and recommendations.

medical condition"). Furthermore, Plaintiff's allegations of chronic and substantial pain that doctors found worthy of treatment are alone sufficient to state a claim. *Id*. (citing *McGuckin,* 974 F.2d at 1059-60); *Colwell*, 763 F.3d at 1066. Plaintiff's health care request forms indicate that he was experiencing significant pain in his knee from May to at least October of 2019. (*See* Doc. 21 at 76, 104-07, 109, 111, 114.) Also, Plaintiff alleges that his knee pain is ongoing. (*See id*. at 2-3.) Plaintiff's health care requests forms and appeal also expressed his ongoing shoulder pain, which has allegedly persisted since 2014 or 2015. (*See id*. at 98, 110, 112.) Therefore, Plaintiff plausibly alleges a serious medical need.

### 2.     Deliberate Indifference

The deficiencies in Plaintiff's complaint arise under the deliberate indifference prong. A prison official must have subjective knowledge of an excessive risk to inmate health or safety and the official must disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Mere negligence is not sufficient. *Estelle*, 429 U.S. at 106; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety."); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (defendant must have a "sufficiently culpable state of mind"); *McGuckin*, 974 F.2d at 1060 ("A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established.").

Plaintiff includes numerous health care request forms, appeals, and other documentation with his second amended complaint. The Court has reviewed Plaintiff's complaint and the documents attached therewith to liberally construe Plaintiff's allegations. In so doing, Plaintiff appears to allege primarily an Eighth Amendment claim for the delay in receiving right knee and right shoulder surgery. (*See* Doc. 21 at 87.) Delay of surgery may constitute deliberate indifference if the delay causes further

harm.[2] *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Because Plaintiff conflates the medical history as to his respective injuries, the Court will separate the two.

                *a.*     *Knee*

As to his knee, it is alleged that Plaintiff was injured on May 4, 2019 and submitted a health care request form[3] on May 5, 2019. (Doc. 21 at 76, 104.) It appears Plaintiff was seen by Defendant Ratliff on May 6, 2019, who reported Plaintiff's pain as 9 out of 10. (*Id.* at 104.) An X-ray was performed on May 8, 2019, and Plaintiff was told the results were normal. (*Id.* at 76.) Plaintiff expressed that he was still in "extreme pain." (*Id.*) On May 18, 2019, Plaintiff submitted another health care request form, which was reviewed by a registered nurse the same day. (*Id.* at 105.) Plaintiff's pain was noted as 9 out of 10. (*Id.*) Plaintiff subsequently submitted a health care request form on May 26, 2019, which was reviewed by a nurse on May 27, 2019. (*Id.* at 106.) The same day, Plaintiff alleges that he filed an appeal (SATF HC 19000749). (*Id.* at 76.) Plaintiff received an Institutional Level Assignment Notice accepting Plaintiff's appeal for response, dated June 5, 2019 and signed by Defendant S. Gome. (*Id.* at 91.) Plaintiff submitted another health care request form on June 21, 2019, which appears to have been reviewed by Defendant S. Roberts on June 22, 2019. (*Id.* at 107.) Plaintiff's pain scale was noted as 10 out of 10. (*Id.*)

Plaintiff received an Institutional Level Response, dated July 31, 2019, and signed by Defendant Cryer. (Doc. 21 at 92, 94.) The response indicates that it addresses Plaintiff's grievances pertaining to his request to receive an MRI and "to be treated for right knee pain." (*Id.* at 92.) The response concluded that:

- Plaintiff was enrolled in the Chronic Care Program, where Plaintiff's "medical condition and medication needs [we]re closely monitored" (*Id.*)
- Plaintiff's "medical records support [that he] received nursing assessments, ongoing primary care provider evaluations, and treatment for your medical conditions as

---

[2] Plaintiff repeatedly alleges he suffered "further significant injury" to his knee and shoulder due to Defendants' failure to treat him. (*See, e.g.*, Doc. 21 at 18, 22, 26.) This is a mere conclusion and is not a factual allegation and is insufficient to satisfy this element.

[3] All health care request forms provided by Plaintiff indicate that Plaintiff was either in pain, that his knee was popping, that he wanted to see a doctor, and/or that he needed an MRI and/or surgery. (*See* Doc. 21 at 104-09, 111.)

4

determined medically necessary." (*Id*.)

- Plaintiff's records reveal he was seen by his primary care provider on June 3, 2019 and July 18, 2019. (*Id*. at 92, 94.)
- Documentation of Plaintiff's June 3, 2019 visit showed Plaintiff was denied an MRI because he did not meet InterQual criteria, but that a plan of care was documented, which included rest, ice, compression, and elevation. (*Id*. at 92.)
- Plaintiff was also referred to orthopedics. (*Id*.)
- Records from Plaintiff's July 18, 2019 visit with his primary care provider, indicate that the referral to orthopedics was denied for failing to meet InterQual criteria. (*Id*. at 94.)
- Plaintiff was issued a knee brace, referred to physical therapy for evaluation and treatment, and was advised to continue with crutches. (*Id*.)

Plaintiff alleges he was dissatisfied with the Institutional Level Response and submitted the appeal to Headquarters.[4] (Doc. 21 at 77.) Plaintiff subsequently submitted two health care request forms on September 27, 2019 and October 17, 2019, both of which were reviewed by a nurse. (*Id*. at 109, 111.) Plaintiff's health care request form from September 27, 2019 contains a notation by Defendant Ratliff stating that an MRI was ordered on September 3, 2019 to be scheduled by December 3, 2019. (*Id*. at 109.) Ratliff also noted Plaintiff would be seen on the "RN line" on October 1, 2019 for knee pain and to discuss the issues stated in Plaintiff's request for an MRI. (*Id*.)

Plaintiff received a Headquarters' Level Response, dated November 6, 2019 and signed by Defendant Gates. (Doc. 21 at 93, 95.) The response states, in part, that Plaintiff was seen by his primary care provider on October 17, 2019 to discuss his MRI results. (*Id*. at 95.) The response also states that a request for services order for Orthopedic Surgery was completed and subsequently approved. (*Id*.)

Plaintiff's MRI report states the MRI was performed on October 15, 2019 and was

---

[4] Plaintiff appears to have included his "dissatisfaction" with the Institutional Level Response to his knee appeal in Section B of his shoulder appeal. (*See* Doc. 21 at 100.) The Court notes that Plaintiff's expressed "dissatisfaction" was expressed more than one year after receiving the Institutional Level Response. Furthermore, the grievance pertained to the determination that Plaintiff did not meet the criteria for a knee MRI, which is rendered moot by the MRI Plaintiff received in October of 2019.

electronically signed by Defendant Brown on the same day. (Doc. 21 at 114.) The report indicates that Plaintiff presented with an "ACL rupture" and an "obliquely oriented tear posterior horn and body medial meniscus." The report lists Plaintiff's Primary Care Provider as Defendant Kim and Plaintiff's Ordering Provider as Defendant Mbadugha. (*Id.*) The report indicates Plaintiff complains of right knee pain due to a basketball injury in May, that his right knee comes out of place when he runs, that there is a popping sound and sharp pain with walking, and that he cannot stand for long periods of time. (*Id.*) The report also notes Plaintiff's statement that his knee brace, physical therapy, and pain medication (NSAID) "have failed." (*Id.*)

Plaintiff includes no subsequent health care request forms, appeals, or allegations that he either requested to be seen, or was seen, by a nurse or other medical provider following the Headquarters' Level Response indicating that surgery was requested and approved. As such, the Court cannot discern whether any Defendant's acts or omissions were the result of a knowing disregard as opposed to mere negligence or inadvertence. For example, the Court cannot discern who ordered the X-ray of Plaintiff's knee, who performed the X-ray on May 8, 2019, or to whom Plaintiff communicated his pain following the X-ray results. It is also unclear to whom the statements referenced in Plaintiff's MRI report were communicated, who read and reviewed the report, or who acted with deliberate indifference to this information. It is not clear to the Court whether NSAID's were the only pain medication Plaintiff was ever prescribed, before or after the MRI report. Notably, Plaintiff fails to allege who recommended his knee surgery, who submitted the request, who approved the surgery, or which Defendants knew that surgery had been requested and/or approved.

As the findings and recommendations stated, to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named Defendant is liable for the misconduct alleged. (Doc. 23 at 2, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).) Conclusory statements that a defendant intentionally delayed Plaintiff's medical care, without more, are insufficient. *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")).

Plaintiff has not stated a facially plausible claim. For example, he claims that each Defendant acted willfully in providing inadequate medical care, without any factual allegations supporting this contention. (*See, e.g.,* Doc. 21 at 17, 21, 25.)[5] Plaintiff also fails to include factual allegations that support his contention that each Defendant's inaction was for the purpose of causing Plaintiff "to endure serious pain and suffering." (*Id*. at 14.) Similarly, Plaintiff alleges he was denied a lower bunk accommodation without providing factual allegations sufficient to allow the Court to reasonably infer that any Defendant is liable for the alleged misconduct. (*Id*. at 6, 77.) As with other Defendants, Plaintiff claims Defendant Ratliff "refused to properly treat the damage," leaving Plaintiff in "serious pain for many months now." (*See id*. at 45, 49, 53.) However, Plaintiff fails to plausibly allege facts supporting this conclusory allegation. Accordingly, Plaintiff has not sufficiently alleged that any of the named Defendants acted with the requisite state of mind in knowingly disregarding Plaintiff's serious medical need.

To the extent Plaintiff believes the course of treatment was inadequate (*see, e.g.*, Doc. 21 at 46, 46,81), "[a] difference in opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference. But that is true only if the dueling opinions are medically acceptable under the circumstances." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (internal citations and quotation marks omitted). "To 'show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health.'" *Id*. (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016)). As outlined above, Plaintiff fails to plausibly allege that any Defendant acted with conscious disregard. Plaintiff also fails to plausibly allege that Plaintiff's course of treatment was medically unacceptable.

Between May and October of 2019, Plaintiff filed six health care request forms, all of which were triaged by a registered nurse. Plaintiff was enrolled in the Chronic Care Program, in which his

---

[5] Plaintiff also alleges his denial of basic medical needs constitutes "a serious matter of negligence." (Doc. 21 at 87.) Mere negligence is not enough. *Estelle*, 429 U.S. at 106.

condition was closely monitored, including nurse assessments, primary care provider evaluations, and treatment. Plaintiff was seen at least three times by his primary care provider between June and October of 2019 and was seen or otherwise had his request reviewed by a nurse on several other occasions. X-rays were ordered almost immediately after Plaintiff reported his injury. Plaintiff was afforded, at a minimum, a knee brace, crutches, physical therapy, and pain medication. Plaintiff did not initially meet the criteria for an MRI or for a referral to orthopedics as of June-July of 2019. The complaint is devoid of factual allegations as to what occurred in August of 2019, but an MRI was ordered on September 3, 2019 and was performed on October 15, 2019, within the scheduled timeframe.[6] Thus, the allegations as presently framed do not plausibly suggest Plaintiff received care that was inadequate or medically unacceptable.

The *Edmo* standard also applies to the extent Plaintiff alleges he received improper pain medication. *See, e.g.*, *Shockner v. Soltanian*, 2021 WL 3186808, at *8 (E.D. Cal. July 28, 2021), *report and recommendation adopted*, 2021 WL 3860356 (E.D. Cal. Aug. 30, 2021) (collecting cases in support of finding that decision to replace methadone with Tylenol was medically unacceptable). While improper pain management may be grounds for relief, Plaintiff's complaint fails to state a cognizable claim based on this assertion. Plaintiff's allegations with respect to inadequate or improper pain medication are limited to (1) his statement noted in the MRI report that his pain medication (NSAID's) had failed (Doc. 21 at 114); and (2) conclusory allegations that each Defendant "did willfully provide medical care in that plaintiff did [] not received [sic] proper pain medication." (Doc. 21 at 22, 25, 29, 33, 36, 40, 44, 48, 52, 56, 59, 63, 67.)

Plaintiff does not allege who prescribed or otherwise provided him with the medication, nor does he allege whether—or with whom—he communicated the ineffectiveness of the medication, other than what is noted in the MRI report. It is also unclear to whom Plaintiff communicated the failure of his pain medication in the MRI report. The Court will not assume Plaintiff's statement was made to Defendant Brown as Plaintiff does not allege this and it is possible that Plaintiff's "Clinical

---

[6] To the extent Plaintiff's claim is based on his requests for an MRI being ignored or delayed, this does not amount to cruel and unusual punishment. *See Estelle*, 429 U.S. at 107 (holding that a medical decision not to order an X-ray or additional diagnostic techniques is a matter for medical judgment and at most medical malpractice).

History" was transferred from a prior medical report. As such, with respect to Plaintiff's claim that he received improper pain medication, the complaint does not sufficiently allege that any or all Defendants acted with deliberate indifference to Plaintiff's serious medical need.

Finally, to the extent Plaintiff alleges his requests for help were ignored (*see* Doc. 21 at 4-5), Plaintiff similarly fails to state a cognizable claim. While such an allegation may be sufficient, *see Jett*, 439 F.3d at 1098, it does not appear that any of Plaintiff's health care request forms went unanswered or that Plaintiff received care that was inadequate or medically unacceptable. Thus, Plaintiff fails to state a cognizable Deliberate Indifference claim with respect to his knee.

### b.    Shoulder

As to his shoulder, Plaintiff submitted a health care request form on October 2, 2019, which was reviewed by Defendant Ratliff on October 3, 2019. (Doc. 21 at 110.) It is unclear whether Ratliff personally evaluated Plaintiff, but Plaintiff's pain was noted as 9 out of 10. (*Id*.) Plaintiff submitted another health care request form on October 28, 2019, which was reviewed by Defendant Ratliff on October 29, 2019. (*Id*. at 112.) Ratliff notes "RN line" on the form. (*Id*.) Plaintiff filed an appeal (SATF HC 20001447) on September 8, 2020. (*Id*. at 98-100.) Plaintiff's appeal states he has suffered from shoulder pain since 2015. (*Id*. at 98.) It appears Plaintiff received a shoulder MRI in the past, and the doctor he saw in response to his request ordered a change in exercise and physical therapy for three months. (*Id*.) No Institutional Level Assignment Notice or Institutional Level Response was alleged or included in Plaintiff's complaint. Plaintiff included a Headquarters' Level Rejection Notice, dated September 23, 2020 and signed by Defendant Gates, which states Plaintiff failed to file his grievance appeal with the correct Health Care Grievance Office and that he had 30 days to take necessary corrective action. (*Id*. at 97.) No other facts are alleged regarding the actions that either Plaintiff or any Defendant took following the rejection notice.[7]

With respect to Plaintiff's shoulder, it is not clear to the Court who treated Plaintiff, who established a treatment plan, whether an MRI was deemed necessary, whether an MRI was performed

---

[7] Plaintiff also includes an Institutional Level Assignment Notice as to an unknown appeal (SATF HC 20001566) dated October 14, 2020. (Doc. 21 at 102.) Because it is unclear what this appeal pertains to, the Court declines to address it.

if it was deemed necessary, or whether surgery was ordered or approved. Like Plaintiff's allegations with respect to his knee, Plaintiff fails to state a cognizable deliberate indifference claim as to his shoulder. Plaintiff does not plausibly allege that the course of treatment was medically unacceptable, that any Defendant ignored his requests for help, or that any Defendant consciously disregarded his medical needs. Plaintiff's shoulder was treated, and it does not appear that surgery was recommended, ordered, or approved. Thus, Plaintiff fails to sufficiently allege that any Defendant acted with deliberate indifference to his serious medical need.

Based upon the foregoing, the Court finds no reason to substantively depart from the findings and recommendations. Moreover, the Court has advised Plaintiff twice already how to plead these claims if he can do so, but he has not. Thus, the Court will not grant further leave to amend.

### B. Remaining Claims

The Court further adopts the findings and recommendations with respect to Plaintiff's Equal Protection claims, California Code of Regulations claims, and ADA claims as to all Defendants except Defendant Stu Sherman. The Court agrees with the findings and recommendations that these claims fail to state cognizable claims for relief and that amendment would be futile. (Doc. 23.) As a result, these claims are **DISMISSED** without leave to amend.

### C. Appointment of Counsel

In his objections, Plaintiff, who describes himself as "a profoundly deaf person" and as "illiterate", requests appointment of counsel or assistance from the Court to help him understand how to amend his complaint. (Doc. 28 at 4.) The Court will not appoint counsel at this time. A district court may appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1) only in "exceptional circumstances." *Rand v. Roland*, 113 F.3d 1520, 1525 (9th Cir. 1997*), overruled on other grounds*, 154 F.3d 952 (9th Cir. 1998). To decide whether exceptional circumstances exist, the Court must evaluate both "the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (quotations omitted). The issues here are not particularly complex, and Plaintiff has shown himself capable of expressing himself in court filings.

///

### D. Court Assistance

As for Plaintiff's separate request for assistance from the Court so that he can better understand how to amend his complaint, the Court provided Plaintiff with the relevant standards on two prior occasions. (Doc. 8 at 6-8; Doc. 16 at 6-9.) As a result, the findings and recommendations recommend dismissal of all but Plaintiff's ADA claim without leave to amend.

## III. Conclusion and Order

Plaintiff's complaint states a cognizable claim for relief in his ADA claim against Defendant Stu Sherman in his official capacity. (*See* Doc. 23 at 10.) Plaintiff's remaining claims are not cognizable as pled. Based upon the foregoing, the Court **ORDERS**:

1. The findings and recommendations issued on October 12, 2021 (Doc. 23) are adopted in full.

2. The matter is referred to the magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated: **June 27, 2022**

UNITED STATES DISTRICT JUDGE