# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM JON RILURCASA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>Defendants. | Case No. 1:20-cv-01568-JLT-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS<br><br>(ECF No. 38) |

Plaintiff Tom Jon Rilurcasa is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant's motion to dismiss, filed November 28, 2022.

**I.**

**RELEVANT BACKGROUND**

This action is proceeding against Defendant S. Sherman, former Warden at Substance Abuse Treatment Facility and State Prison, Corcoran (SATF), in his official capacity, for violation of Plaintiff's rights under the Americans with Disabilities Act (ADA).

On November 28, 2022, Defendant filed a motion to dismiss the complaint. (ECF No. 38.)  Plaintiff filed an opposition on March 23, 2023, and Defendant filed a reply on April 6, 2023. (ECF Nos. 47, 48.)

///

///

1

## II.

## DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(B)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The pleading standard under Rule 8 of the Federal Rules of Civil Procedure does not require " 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Starr, 652 F.3d at 1216. "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988)).

**B.      Complaint Allegations**

Plaintiff alleges he is deaf and requires an American Sign Language (ASL) interpreter as his main form of communication.  Plaintiff further alleges that he was denied a sign language interpreter when he met with various medical professionals.

**C.      Defendant's Motion to Dismiss**

Defendant argues Plaintiff failed to exhaust the administrative remedies and his complaint fails to state a cognizable claim for relief under the ADA.

1.      Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions."   42 U.S.C. § 1997e(a); see Ross v. Blake, 578 U.S. 632, 648 (2016) ("An inmate need exhaust only such administrative remedies that are 'available.'").  Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion.  Jones v. Bock, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino v. Baca, 747 F.3d at 1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed

1  evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust.  Id.

2        Defendant argues Plaintiff's own statements establish that the grievance process was
3  available to him and that he "exhausted one appeal, including one that was unjustly cancelled."
4  (ECF No. 38 at 5.)  In his second amended complaint, Plaintiff attached and described three
5  separate grievances he filed with regard to the allegations in the complaint.  Defendant submits
6  that none of Plaintiff's submitted grievances allege he was denied ASL services at any point.
7  Rather, the grievances focused on Plaintiff's requests for medical attention and specific medical
8  procedures.  Further, Plaintiff provides no factual support for his claim that the administrative
9  process was "futile" and that one of his appeals was "unjustly cancelled."

10        Here, while Plaintiff has filed some administrative grievances based on the attachments
11  to the second amended complaint, it is not clear from the face of the second amended complaint
12  that he failed to exhaust the administrative remedies with respect to his ADA claim. Because
13  there is some ambiguity as to whether Plaintiff adequately exhausted the administrative
14  remedies, this is not one of the "rare" instances in which the failure to exhaust is clear from the
15  face of the complaint.  Although Plaintiff attached administrative grievances to his second
16  amended complaint and alleged that one of his appeals was "unjustly cancelled," the Court
17  cannot rule out the fact that there may be other appeals that could serve to exhaust the
18  administrative remedies.  Plaintiff was not required to allege all facts relevant to his exhaustion
19  attempts on the face of his second amended complaint, nor is a motion to dismiss the appropriate
20  mechanism to challenge the sufficiency of the evidence.  Indeed, in opposition to the motion to
21  dismiss, Plaintiff submits that without a full record of all of Plaintiff's exhaustion efforts, the
22  Court cannot determine from the face of the second amended complaint that Plaintiff failed to
23  exhaust the administrative remedies with respect to his ADA claim against Defendant Sherman.
24  Accordingly, Defendant's motion to dismiss the ADA claim against for failure to exhaust the
25  administrative remedies should be denied.

26      2.    <u>American with Disabilities Act</u>

27        Title II of the ADA, which "prohibits a 'public entity' from discriminating against a
28  'qualified individual with a disability' on account of that individual's disability, covers inmates

in state prisons." Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 208 (1998) (citation omitted); see Castle v. Eurofresh, Inc., 731 F.3d 901, 910 (9th Cir. 2013) ("Title II applies to the operation of state prisons."); see also Pierce v. Cnty. of Orange, 526 F.3d 1190, 1214 (9th Cir. 2008) ("It is undisputed that Title II applies to [county] jails' services, programs, and activities for detainees."). To achieve compliance with the Act, "Title II authorizes suits by private citizens for money damages against public entities that violate § 12132." United States v. Georgia, 546 U.S. 151, 154 (2006) (citing 42 U.S.C. § 12133).

Section 12132 provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." To state a claim under Title II, a plaintiff must allege:

> he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability.

Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010) (citation and brackets omitted).

A person is "disabled" under the ADA if he or she has "a physical or mental impairment that substantially limits one or more major life activities of such individual; ... a record of such an impairment; or ... [is] regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2)(A). Major life activities also include the operation of major bodily functions, such as "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." Id. § 12102(2)(B).

A "qualified individual with a disability" under Title II is anyone with a disability who, "with or without reasonable modifications to rules, policies, or practices, the removal of

5

1  architectural, communication, or transportation barriers, or the provision of auxiliary aids and
2  services, meets the essential eligibility requirements for the receipt of services or the
3  participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). This
4  definition, which does not require "voluntary" participation in the public entity's services or
5  programs, applies to state prisoners and county jail detainees. Yeskey, 524 U.S. at 211; Pierce,
6  526 F.3d at 1214-15.

   "[T]he ADA entitles inmates to receive the 'benefits' of the incarcerating institution's
programs and services without facing discrimination on account of a disability." Armstrong v.
Schwarzenegger, 622 F.3d 1058, 1068 (9th Cir. 2010). Such benefits may include the right to
participate in or receive a prison's "recreational 'activities,' medical 'services,' and educational
and vocational 'programs.' " Yeskey, 524 U.S. at 210. The Ninth Circuit has found that the
"denial of mobility-assistance devices to persons unable to physically function without them, the
denial of hearing devices to deaf [inmates], and the denial of accessibility devices, such as
tapping canes, to blind [inmates]" may violate Title II where the deprivations force disabled
prisoners "into the vulnerable position of being dependent on other inmates to enable them to
obtain basic services, such as meals, mail, showers, and toilets." Armstrong v. Brown, 732 F.3d
955, 960 (9th Cir. 2013); see also Bogovich v. Sandoval, 189 F.3d 999, 1002 (9th Cir. 1999)
("Ordinarily, state prisoners' ADA claims relate to issues such as the denial of access to prison
facilities, denial of satisfactory medical attention, denial of sign language interpretation services,
or denial of the opportunity to participate in educational, vocational, or rehabilitation
programs.").

   The proper defendant in an ADA action is the public entity responsible for the alleged
discrimination. United States v. Georgia, 546 U.S. 151, 153 (2006). State correctional facilities
are "public entities" within the meaning of the ADA. See 42 U.S.C. § 12131(1)(A) & (B); Penn.
Dept. of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998); Armstrong v. Wilson, 124 F.3d 1019, 1025
(9th Cir. 1997).  However, a state official sued in her official capacity is, in effect, a suit against
the government entity and is an appropriate defendant in an ADA action. See Applegate v. CCI,
No. 1:16-cv-1343 MJS (PC), 2016 WL 7491635, at *5 (E.D. Cal. Dec. 29, 2016) (citing Miranda

1  B. v. Kitzhaber, 328 F.3d 1181, 1187-88 (9th Cir. 2003); Kentucky v. Graham, 473 U.S. 159,
2  165 (1985) ).  A plaintiff also cannot assert a claim under section 1983 against Defendants in
3  their individual capacities to vindicate rights created by the ADA and the RA.  See Vinson v.
4  Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002).

Defendant argues that Plaintiff's complaint fails to allege facts that plausibly state an ADA claim.  More specifically, Plaintiff's allegations fail to identify how many instances his requests for ASL services were denied or whether other forms of communication were used instead.  In addition, there are no allegations in the second amended complaint that show SATF staff followed a policy of intentionally discriminating against Plaintiff because of his disability.  The Court does not agree.

The Court construes and finds that Plaintiff's civil rights claim is properly brought directly under 42 U.S.C. § 12132, and not 42 U.S.C. § 1983.  Consequently, Plaintiff need not allege that a state/prison policy was the moving force of the alleged violation.  In the second amended complaint, Plaintiff alleges that he "did not get an ASL interpreter most of the time" and instead SATF staff "went out of their way to refuse Plaintiff a[n] ASL interpreter."  (Sec. Am. Compl. at 6-7, 19-20.)  In his opposition, Plaintiff submits that "he was repeatedly denied an ASL interpreter when he went to see the nurse or doctor, and when he went out to see a medical specialist and there were many times that Plaintiff ask for help because he was in pain, but he was told they could not see him because he was deaf and they did not have an ASL interpreter." (ECF No. 47 at 2.)

Title II of the Americans with Disabilities Act, section 12132 provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." To state a claim under Title II, a plaintiff must allege:

> he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability.

1 Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010) (citation and brackets
2 omitted).

3       Plaintiff's second amended complaint, liberally construed, states a colorable ADA claim.
4 First, Plaintiff has sufficiently alleged that he qualifies as an individual with a disability because
5 he is deaf. Second, Plaintiff sufficiently alleges that the prisons where he has been held are
6 public entities subject to the ADA. Finally, Plaintiff sufficiently alleges that he was denied
7 access to plausible accommodations-an interpreter-which would allow for adequate participation
8 in his medical appointments and treatment. Plaintiff is not required at this stage of the
9 proceedings to identify all the facts and evidence that he will ultimately need to prove an ADA,
10 particularly given Plaintiff's pro se status. Plaintiff's allegations, taken as true, are sufficient at
11 the pleading stage to give to a claim under the ADA. Fed. R. Civ. P. 8(a)(2)-(3) (a pleading need
12 only contain "a short and plain statement of the claim showing that the pleader is entitled to
13 relief" and "a demand for the relief sought."). Further, details regarding Plaintiff's claim may be
14 developed through discovery. Nonetheless, the Court notes that, at the time of a summary
15 judgment motion, if the materials facts are shown to be undisputed and shown to favor
16 Defendant, the ultimate result may be different. However, at the pleading stage, the Court is
17 required to test the pleadings under the appropriate standards. Accordingly, Defendant's motion
18 to dismiss the second amended complaint for failure to state a cognizable claim for relief should
19 be denied.

20       **III.**
21       **RECOMMENDATION**

22     Based on the foregoing, it is HEREBY RECOMMENDED that Defendant's motion to
23 dismiss the second amended complaint be denied.
24     This Findings and Recommendation will be submitted to the United States District Judge
25 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one**
26 **(21) days** after being served with this Findings and Recommendation, the parties may file
27 written objections with the Court. The document should be captioned "Objections to Magistrate
28 Judge's Findings and Recommendation." The parties are advised that failure to file objections

within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **May 2, 2023**

UNITED STATES MAGISTRATE JUDGE